# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **RONALD KREGER, SR.** | **CIVIL ACTION** |
| **VERSUS** | **NO: 07-575** |
| **GENERAL STEEL CORPORATION, GREGG LANIER HOWELL, WORLDWIDE CONCRETE & STEEL ERECTIONS, L.L.C.** | **SECTION: "C" (1)** |

### ORDER & REASONS[1]

This matter is before the Court on Defendants General Steel Corporation, Gregg Lanier Howell, and Worldwide Concrete and Steel Erections, L.L.C.'s motion to dismiss Plaintiff Ronald Kreger, Sr.'s Second Amended and Supplemental Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). Rec. Doc. 477. Having considered the record, the memoranda, and the law, the Court concludes that the plaintiff has pled sufficient facts to state a claim for the following reasons.

### I. BACKGROUND

The plaintiff filed a complaint pursuant to 28 U.S.C. § 1332 as the representative of a class of persons similarly situated against Defendants General Steel Corporation ("General Steel"), Gregg Lanier Howell ("Howell"), and Worldwide Concrete and Steel Erections, L.L.C. ("Worldwide Concrete"), for fraud, unfair and deceptive trade practices, conspiracy, negligent

---

[1] Alexandra Sloan, a second year student at Northwestern University School of Law, assisted in preparing this opinion.

misrepresentation, fraud in the inducement of a contract, breach of contract, and detrimental reliance.[2] Rec. Doc. 1 at 9-13. The plaintiff later filed a first amended complaint modifying the breach of contract claim, Rec. Doc. 17 at 17, and the defendants filed answers to both, Rec. Doc. 6; Rec. Doc. 225. The plaintiff filed a second amended complaint reducing the counts to two: (1) unfair and deceptive trade practices under the Colorado Consumer Protections Act ("CCPA") C.R.S. 6-1-101 et seq., and (2) bad faith breach of contract, breach of contract, and breach of the obligation of good faith performance under a contract under Colorado law.[3] Rec. Doc. 473 at 26-29. The defendants filed a motion to dismiss these claims pursuant to Federal Rule of Civil Procedure 12(b)(6).[4] Rec. Doc. 477.

In his original complaint, the plaintiff landowner alleged that in April 2006, when he signed a contract with General Steel to construct a steel building, the defendant corporation represented to him that it would arrange for all the phases of the project. Id. at 3. The plaintiff signed a purchase agreement for the manufacture of the building in the amount of $284,313, of which he initially sent $80,000 to General Steel. Id. at 4. He and General Steel later completed

---

[2] The class has not been certified. The Court dismissed without prejudice plaintiff's motion to certify the class as set forth in plaintiff's motion and subsequent briefing from both parties over a period of seven months. Rec. Doc. 182. The Court granted the plaintiff until 8/5/09 to file a motion to certify the class. Rec. Doc. 528.

[3] The parties do not dispute that Colorado law applies to this action. Rec. Doc. 473 at 3-4; Rec. Doc. 477 at 3-4. The contract between General Steel and the plaintiff and potential class members is governed by Colorado law according to its own terms.

[4] The defendants also seek to dismiss the plaintiff's claim for punitive or exemplary damages under the CCPA, C.R.S. § 6-1-113, and under Colorado's punitive damages statute for tort claims, C.R.S. § 13-21-102. However, as the plaintiff notes, a 12(b)(6) motion addresses whether the pleadings assert a viable cause of action entitling the plaintiff to any relief. Rec. Doc. 482 at 8. In a claim brought in federal court under state law, the state's law governs whether or not a punitive damages claim may stand alone. Gaia Techs., Inc. v. Recycled Prods. Corp., 175 F.3d 365, 372-73 (5th Cir. 1999). Under Colorado law, a claim for punitive damages is not a separate cause of action; it is auxiliary to the underlying claim. See Atlantic Richfield Co. v. Farm Credit Bank of Wichita, 226 F.3d 1138, 1160, n. 11 (10th Cir. 2000)(quoting Pulliam v. Dreiling, 839P.2d 521, 524 (Colo. Ct. App. 1992). Therefore, the question whether plaintiffs are entitled to exemplary or punitive damages is not ripe for decision by this Court.

a Component Purchase Order for extra features in the amount of $20,062.50, $6,018.75 of which he sent as a deposit to General Steel. Id. He alleged that despite his understanding with General Steel that it would be performing a turnkey project, a General Steel employee advised him to sign a contract with Howell whose company Worldwide Concrete would perform the foundation, unpacking, and erection of the building instead of General Steel. Id. at 5.

Having signed the resulting contract on or about May 31, 2006, and upon Howell's instruction, the plaintiff allegedly wired $145,229 of the total of $315,687 to BB&T Bank in Bowling Green, Kentucky. Id. at 6. The plaintiff alleged that Howell became the principal contact for the project, and that he ceased communicating with the plaintiff in the weeks thereafter. Id. at 7. The plaintiff avers that Howell had been convicted with theft and deception and had recently been charged with similar offenses. Id. at 8. According to the plaintiff, General Steel was "aware of the problems with Howell and his company . . . as early as February 2006" but did not communicate those problems to the plaintiff. Id. at 9.

The plaintiff stated that at the time he filed his original complaint, he had paid $86,018.75 to General Steel and $145,229 to Howell and there was no indication that the defendants had begun the project. Id. The facts alleged in the Original Complaint, and the First and Second Amended and Supplemental Complaints are substantially similar. Rec. Doc. 1; Rec. Doc. 17; Rec. Doc. 473.

## II. LAW & ANALYSIS

The defendants seek to dismiss the plaintiff's claims under Federal Rule of Civil

3

Procedure 12(b)(6).[5] First, they argue that the claim for bad faith breach of contract and breach of the obligation of good faith in the performance of a contract as a separate claim from the general breach of contract claim fails as a matter of law because Colorado does not recognize such claims under the facts of this case. Rec. Doc. 477 at 4-5. Second, they contend that the CCPA claim fails because the plaintiff has not alleged that the defendants engaged in any deceptive trade practice, or that any practice had a significant public impact. Rec. Doc. 477 at 9-14. The Court addresses each claim as follows.

**A. Breach of Contract**

The defendants argue that the plaintiff's breach of contract claims fail as a matter of law. Rec. Doc. 477 at 4-5. Colorado contracts contain an implied duty of good faith and fair dealing. Cary v. United of Omaha Life Ins. Co., 68 P.3d 462, 466 (Colo. 2003). In most contracts, a breach of that duty does not give rise to a cause of action separate from the breach of contract.[6] Id. Insurance contracts are one exception, because the insureds' motive is to secure peace of mind, not to gain commercial advantage, and because the bargaining power between the two parties is disparate. Goodson v. American Standard Ins. Co. of Wisconsin, 89 P.3d 409, 414 (Colo. 2004).

The defendants argue that the plaintiff's claim for bad faith breach fails because theirs was a building contract, and bad faith breach claims exist only where insurance agreements are

---

[5] In his memorandum opposing the defendants' motion to dismiss his Second Amended and Supplemental Complaint, the plaintiff argues that it is improper to move to dismiss claims that were brought over two years ago in prior complaints. Rec. Doc. 482 at 4. However, a 12(b)(6) defense may be brought at any time before the end of the trial stage of an action. Fed. R. Civ. P. 12(h)(2). See also 5C Fed. Prac. & Proc. § 1392.

[6] The Court will not distinguish between the terms "bad faith breach" and "breach of the obligation of good faith performance" in this analysis because the plaintiff appears to use the terms interchangeably. Rec. Doc. 482 at 5-7.

involved. However, Colorado recognizes a bad faith breach of contract in situations where a "special relationship" exists between the parties. Franks v. Colo. Nat'l. Bank - Arapahoe, 855 P.2d 455, 458 (Colo. App. 1933)(holding that relationship with defendants must be "special" beyond label of "debtor" and "creditor"). The Franks court relied on First Nat'l. Bank of Meeker v. Theos, which characterized a non-fiduciary but privileged relationship as "confidential." 794 P.2d 1055, 1061 (Colo. App. 1990). The following may demonstrate a confidential relationship:

> (1) one party has taken steps to induce another to believe that it can safely rely on the first party's judgment or advice; (2) one person has gained the confidence of the other and purports to act or advise with the other's interest in mind; or (3) the parties' relationship is such that one is induced to relax the care and vigilance one ordinarily would exercise with a stranger.

Id. (citations omitted). See also In re Marriage of Page, 70 P.3d 579 (Colo. App. 2003).

Moreover, the Colorado Supreme Court did not state that insurance agreements were the sole types of contracts that could give rise to a separate bad faith breach of contract claim. Goodson, 89 P.3d 409, 414. Instead, it noted that "most contractual relationships" do not give rise to a separate cause of action for bad faith breach arising in tort. Id. Thus, a bad faith breach claim is not strictly limited to insurance agreements. Without addressing the substance of the plaintiff's claim of confidentiality at this stage in the proceedings, the Court finds that sufficient facts were pled to withstand dismissal. Thus, the Court concludes that plaintiff's claims for breach of contract and for bad faith breach of contract do not fail as a matter of law.

**B. CCPA**

The defendants argue that the plaintiff's CCPA claim fails because he did not allege that they engaged in a deceptive trade practice. Rec. Doc. 477 at 9-14. In reviewing a Rule 12(b)(6) motion, the factual allegations in the pleadings are taken as true, "but the plaintiff must plead

5

'enough facts to state a claim to relief that is plausible on its face.'" Dunn v. Prince, 2009 WL 1024612, *1 (5th Cir., Apr. 16, 2009)(quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007). The plaintiff's factual allegations must raise the right to relief "above the speculative level." In Re Katrina Canal Breaches Litigation, 495 F.3d 191, 205 (5th Cir. 2001). Conclusory allegations and a "formulaic recitation of the elements of a cause of action" will not prevent dismissal. Ashcroft v. Iqbal, — U.S. —, 129 S. Ct. 1937, 1951 (May 18, 2009)(quoting Twombly, 550 U.S. at 555). Dismissal is not warranted, however, by a judge's disbelief of a complaint's factual allegations or the appearance that recovery is remote and unlikely. Twombly, 550 U.S. at 556.

> To recover under the CCPA, a plaintiff must show:
>
> (1) that the defendant engaged in an unfair or deceptive trade practice; (2) that the challenged practice occurred in the course of defendant's business, vocation, or occupation; (3) that it significantly impacts the public as actual or potential consumers of the defendant's goods, services, or property; (4) that the plaintiff suffered injury in fact to a legally protected interest; and (5) that the challenged practice cause the plaintiff's injury.

Ramirez v. eWork, Inc., 2007 WL 2746634, *3 (D. Colo. 2007)(citing Rhino Linings U.S.A., Inc. V. Rocky Mountain Rhino Lining, Inc., 62 P.3d 142, 146-47 (Colo. 2003)). The defendants argue that the plaintiff has not alleged facts satisfying two of the five elements of a CCPA claim. Rec. Doc. 477 at 9-14. Specifically, the defendants contend that the plaintiff did not allege facts showing that (1) the defendants engaged in a deceptive trade practice listed under section 6-1-105, and (2) any alleged practice significantly impacted the public. Rec. Doc. 477 at 9-14.

Taking the allegations as true and drawing all reasonable inferences in favor of the plaintiffs, the Court finds that the plaintiff's allegations are sufficient to support a claim of

deceptive trade practices. First, the facts regarding the defendants' conduct falls under several of section 6-1-105's deceptive trade practices. Under section 6-1-105(1)(g) of the CCPA, a deceptive trade practice includes a misrepresentation "that goods, . . . are of a particular standard, quality, or grade, . . . if he knows or should know that they are of another." Moreover, a person engages a prohibited practice by "knowingly mak[ing] a false representation as to the characteristics . . . of . . . services." C.R.S. 6-1-105(1)(e). Under Colorado law, a defendant may be liable under the CCPA if it makes such representations recklessly, without knowledge of whether they are true or false. AdvantEdge Business Group, L.L.C.v. Meridian Benefit, Inc., 2006 WL 827197, *7 (D. Colo. 2006).

The plaintiff alleged that General Steel promised the project was "turnkey" and that it would oversee all stages of the building project through project managers, but that it failed to perform background checks and supervise one of the managers, Gregg Howell. Rec. Doc. 473 at 10. The plaintiff claimed that General Steel insisted that the plaintiff sign a contract for the foundation and erection of the building with Howell, and recommended him as a "premier" contractor, without investigating or disclosing knowledge about his alleged criminal background. Id. at 10-11. The plaintiff noted that General Steel alleged that it learned about Howell's criminal background in August, 2006, when it received a telephone call from the Federal Bureau of Investigation. Id. at 13. The plaintiff alleged that he and other clients issued complaints about Howell, such that General Steel was aware that Howell was not performing the promised service. Id. at 20-21. He also alleged that General Steel "admitted that by December 31, 2006, shortly before Howell was incarcerated, it still had not warned" its customers of Howell's criminal background. Id. at 13. He claimed that General Steel was aware of "problems" with Howell as

7

early as February and decidedly by April 2006, when the plaintiff first solicited General Steel regarding the building project, but did not so inform the plaintiff. Id. at 11. Finally, the plaintiff claimed that General Steel misrepresented that it would provide usable plans which could be used to pull permits in the customer's locale. Id. at 20. The plaintiff alleged that between the end of April, 2006, and on or about June 1, 2006, he submitted three payments to the defendants, totaling $231,247.75, based on the above misrepresentations. Id. at 16, 19.

These allegations are sufficient to claim defendants' representations to the plaintiff constitute false statements of material fact that misled the plaintiff about the quality of their services. They are more substantial than a "formulaic recitation of the elements" of a CCPA claim. Ashcroft, — U.S. —, 129 S. Ct. At 1951 (quoting Twombly, 550 U.S. at 555). Accordingly, the plaintiff has alleged sufficient facts to withstand a 12(b)(6) motion in regard to the first element of a CCPA claim.

Second, plaintiff alleged sufficient facts to show that the alleged deceptive conduct had a public impact. To determine public impact, the Court considers:

> (1) the number of consumers directly affected by the challenged practice; (2) the relative sophistication and bargaining power of the consumers affected by the challenged practice; and (3) evidence that the challenged practice has previously impacted other consumers or has the significant potential to do so in the future.

Ramirez, 2007 WL 2746634 at *4 (citing Rhino Linings, 62 P.2d at 149). Moreover, "[d]eceptive trade practices include a false representation that induces a party to act or has the capacity or tendency to attract consumers." Rhino Linings, 62 P.3d at 147-48. The plaintiff argues that General Steel recommended Howell directly to at least 70 customers, and to other potential customers via a customer database containing the contact information of prospective

8

customers. Rec. Doc. 480 at 5-6. Further, the plaintiff alleged that the sophistication between the plaintiff and the defendants was disparate, since he was "not an expert in the purchase" of such buildings, and "did not have an arsenal of legal, engineering, and other experts at their disposal to assist" him. Rec. Doc. 473 at 28. Finally, the plaintiff alleged that the defendants' alleged misrepresentations encouraged other current, past and prospective customers to purchase buildings from General Steel. Id. at 29. According to plaintiff, General Steel suppressed complaints, and did not stop recommending Howell after it received a telephone call from the Federal Bureau of Investigation in August, 2006, relative to his criminal activities. Id. at 28.

These allegations are sufficient to claim that defendants' alleged misrepresentations could have hurt at least tens of actual and potential customers. Accordingly, the plaintiff has alleged sufficient facts to withstand a 12(b)(6) motion in regard to the third element of a CCPA claim

The Colorado Supreme Court has noted that "[t]he CCPA deters and punishes businesses which commit deceptive practices in their dealings with the public by providing prompt, economical, and readily available remedies against consumer fraud." Rhino Linings, 62 P.3d at 146. See also Crowe v. Tull, 126 P.3d 196 (Colo. 2006)(explaining that an expansive approach to the CCPA is appropriate because of its "strong and sweeping remedial purposes"). The alleged conduct falls within the scope of the CCPA's language and purpose, and therefore dismissal of the CCPA claim is denied.

### III. CONCLUSION

Accordingly,

**IT IS ORDERED** that the motion for dismissal filed by General Steel Corporation is DENIED.

New Orleans, Louisiana, this 3rd day of August, 2009.

                                              HELEN G. BERRIGAN
                                              UNITED STATES DISTRICT JUDGE