# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **RONALD KREGER, SR.,** | **CIVIL ACTION** |
| **VERSUS** | **NO: 07-575** |
| **GENERAL STEEL CORPORATION, GREGG LANIER HOWELL, WORLDWIDE CONCRETE AND STEEL ERECTIONS, L.L.C.** | **SECTION: "C" (1)** |

## ORDER AND REASONS

Before the Court is Defendant General Steel Corporations's (General Steel) Motion for Partial Summary Judgment (Rec. Doc. 518) and Third Party Defendant Colorado Casualty Insurance Company's ("Colorado Casualty") Cross-Motion for Summary Judgment. (Rec. Doc. 530).

Based on the memoranda of parties and the relevant case law, the Court GRANTS General Steel's motion and DENIES Colorado Casualty's motion for the following reasons.

## I. BACKGROUND

On February 1, 2007, Plaintiff Ronald Kreger filed a complaint against three defendants, General Steel, Gregg Lanier Howell and Worldwide Concrete and Steel Erections, LLC. Kreger seeks damages for fraud, unfair and deceptive trade practices, conspiracy, negligent misrepresentation, fraud in the inducement, beach of contract and detrimental reliance. (Rec. Doc. 1). General Steel, in turn, filed a Third-Party Complaint against its general liability and commercial insurer, Colorado Casualty. (Rec. Doc. 225).

Colorado Casualty claims that it owes no duty to defend General Steel, as none of the allegations by Kreger trigger coverage under the Commercial General Liability (CGL) policy in effect between these two parties. (Rec. Doc. 530-2 at 3-4). General Steel disagrees, and filed this Motion for Partial Summary judgment against Colorado Casualty on its claims for fees and costs

incurred defending the claims asserted against it by Kreger. (Rec. Doc. 518 at 1). Colorado Casualty, in turn, filed its Cross Motion for Summary Judgment, requesting that the Court hold that under the terms of the policy, it had neither a duty to defend nor a duty to indemnify. (Rec. Doc. 530-2 at 3-4).

## II. LAW AND ANALYSIS

### A. Legal Standard

Summary judgment is appropriate when there are no genuine issues as to any material facts, and the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-323, 106 S.Ct. 2548, 2552 (1986). A court must be satisfied that no reasonable trier of fact could find for the nonmoving party or, in other words, "that the evidence favoring the nonmoving party is insufficient to enable a reasonable jury to return a verdict in her favor." *Lavespere v. Niagara Mach. & Tool Works, Inc.*, 910 F.2d 167, 178 (5th Cir.1990) ( citing *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 249, 106 S.Ct. 2505, 2511 (1986)). The moving party bears the burden of establishing that there are no genuine issues of material fact.

### B. Discussion

The issues before the court are 1) whether Colorado or Louisiana law governs the third party claims of General Steel and 2) whether a duty defend exists under that law.[1]

#### 1. Governing Law

---

[1] Colorado Casualty also argues that it has no duty to indemnify, and therefore that General Steel's claims should be dismissed in their entirety. (Rec. Doc. 530-2 at 2). If Colorado Casualty had no duty to defend, it would also have no duty to indemnify. *Cyprus Amax Minerals Co. v. Lexington Ins. Co.*, 74 P.3d 294, 299-300 (Colo 2003). However, because the Court holds that there is a duty to defend, a decision on the duty to indemnify would be premature. *Id.*

The Court's March 13, 2009, ruling held that in the absence of a showing that the relevant laws of Colorado and Louisiana were in conflict, Louisiana law would apply. (Rec. Doc. 508 at 3). That Order and Reasons dismissed Colorado Casualty's Motion for Partial Summary Judgment without prejudice, and Colorado Casualty now asserts that a conflict exists and that Colorado law should apply. (Rec. Doc. 530-2 at 11-12). General Steel argues that no conflict exists, and that regardless Louisiana law applies. (Rec. Doc. 539 at 7). The Court now finds that a relevant conflict of laws exists, and that Colorado law should apply.

The controlling language of the insurance contract between the parties states as follows:

I.1(a) We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. . . .
I.1(b) This insurance applies to "bodily injury" and "property damage" only if:
    (1) The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory" . . .
V.3 "Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time. . . .
V.14 "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions. (Rec. Doc. 518-7 at 1, 13-14).

Although Kreger's complaint alleges no physical harm, it includes a claim for damages for "severe mental anguish and emotional damages." (Rec. Doc. 518-5 at 18). In his deposition, Kreger indicated that the stress of the dispute caused him to lose sleep for eight months. (Rec. Doc. 539 at 13; Rec. Doc. 518-6 at 2). The parties are at odds over whether Colorado and Louisiana Law would interpret "bodily injury" and "occurrence" in the CGL policy to apply to these claims. (Rec. Doc. 539 at 7-14; Rec. Doc. 530 at 11-12). General Steel asserts that under both states' laws, "bodily injury" can include emotional suffering, and that negligent misrepresentations can constitute an "occurrence." Colorado Casualty disagrees, arguing that neither state would allow such a claim

3

under the policy language. (Rec. Doc. 530-2 at 17, 19). Before addressing the merits, the Court must determine whether an identifiable conflict exists between Colorado and Louisiana law on the controlling law surrounding CGL interpretation.

*a. Occurrence*

Kreger's amended complaint includes general allegations of negligence and a claim in Count 4 that General Steel is liable under a theory of "negligent misrepresentation" for its referral of Howell to Kreger. (Rec. Doc. 518-5 at 13-14, 16). General Steel argues that negligent acts can be considered "harmful conditions" within the CGL policy's definition of an "occurrence." (Rec. Doc. 539 at 11). Colorado Casualty argues that the claims at issue all stem from the underlying contract, and therefore the harms alleged by Kreger are not "accidents" under Colorado or Louisiana law. (Rec. Doc. 530-2 at 13-17).

Although the Louisiana Supreme Court has not addressed the question directly, a Louisiana appeals court held that an "accident," as used to define "occurrence," is determined from the viewpoint of the victim: "losses that were unforeseen and unexpected by the victim are the result of an accident. . . . [U]nforeseen and unexpected loss, whether the result of a defective product or an insured's negligent communication of misleading, incomplete, or incorrect information during the policy period, constitutes . . . an 'occurrence.'" *Gaylord Chemical Corporation v. Propump, Inc.*, 753 S.2d 349, 354 (La. App. 2000) (internal citations omitted); *see also Global ADR, Inc. v. City of Hammond*, 2004 WL 2694902 at *10 (E.D. La. Nov. 23, 2004) (citing *Gaylord* for the proposition that negligent misrepresentations may constitute occurrences in a CGL policy).

In contrast, a Colorado appeals court cited *Gaylord* as one example of the "minority rule." *Cyprus Amax Minerals Co. v. Lexington Ins. Co.*, 55 P.3d 200, 205 (Colo. App. 2002) *rev'd on other*

4

*grounds*, 74 P.3d 294 (Colo. 2003). That court noted that the "generally accepted" rule was that alleged misrepresentations do *not* constitute an occurrence. *Id.*, 55 P.3d at 205. However, the court there ultimately avoided deciding whether negligent misrepresentations could constitute an occurrence, and ruled in favor of the insurer on other grounds. *Id.* at 205-06. Further, the appellate court in *M.L. Foss, Inc. v. Liberty Mut. Ins. Co.*, 885 P.2d 284, 285 (Colo. Ct. App. 1994) (disapproved of on other grounds by *Cyprus Amax Minerals Co. v. Lexington Ins. Co.*, 74 P.3d 294 (Colo. 2003)), assumed without deciding that negligent misrepresentation *can* constitute an occurrence. The Colorado Supreme Court has not addressed this question head on, but it has discussed the history of the term "accident" and held that a results oriented approach to "accidents" was most appropriate: "a voluntary act that causes an unforeseeable, unintended, or unexpected result can be considered an accident." *Carroll v. CUNA Mutual Ins. Co.*, 894 P.2d 746, 753 (Colo. 1995).

### b. Bodily Injury

If the Court finds that the alleged harms constitute an "occurrence," it must next decide whether they are "bodily injur[ies]" within the meaning of the policy. Louisiana courts have held that when a plaintiff's emotional distress includes physical manifestations, it is considered a "bodily injury" in policies that define bodily injury to include "sickness or disease," *Crabtree v. State Farm Ins. Co.*, 632 So.2d 736, 743 (La. 1994) (in the context of *Lejeune* claimants); *Johnson v. Orleans Parish Sch. Bd.*, 975 So.2d 698, 714 (La. App. 2008) (citing *Crabtree*); *Levy v. Duclaux*, 324 So.2d 1, 11 (La. App. 1976) (holding that "sickness or disease" in the policy definition includes mental distress which persists over a period of time and necessitates the taking of medication and interferes with work performance). But the Louisiana Supreme Court has never defined the precise magnitude

5

of the physical manifestation required, nor has it considered whether the ruling in *Crabtree* applies to claims for emotional distress outside of the *Lejeune* context.

The Colorado Supreme Court has held that "'bodily injury' . . . does not encompass *purely* emotional harm." *National Casualty Co. v. Great Southwest Fire Ins., Co.*, 833 P.2d 741, 746 (Co. 1992) (emphasis added). The Tenth Circuit, in an unpublished opinion, highlighted the ambiguity in the Supreme Court's language, noting that Colorado appellate courts since *National Casualty Co.* have held that *some* physical indicia of distress are sufficient for recovery under Colorado law. *American Fire and Casualty Co.*, 282 Fed. Appx. 643, 651 (10th Cir. 2008) ("chronic, long-continued, or repeated nausea headaches, hysterical attacks, or mental aberrations") (internal quotations omitted). For example, in *State Farm Fire & Casualty Company v. Nikitow*, 924 P.2d 1084 (Colo. Ct. App. 1995), nausea and ongoing nightmares were deemed sufficient as a basis for discovery, though notably those symptoms were tied to an underlying claim in which the plaintiff was rendered quadriplegic during a chiropractic treatment. *Id.* at 1088-89. Like Louisiana's high court, the Colorado Supreme Court has not ruled on the precise magnitude of the physical harm required to depart from the "purely emotional harm" rule in *National Casualty Co.*

### c. Choice of Law

Where it is clear that the laws of two states are in harmony, it is the Court's obligation to apply the law of the forum state. *Mumblow v. Monroe Broadcasting, Inc.,* 401 F.3d 616, 620 (5th Cir. 2005); *see also Travelers Ins. Co.*, 2003 WL 21999354 at *7 (E.D. La. Aug. 22, 2003). Here, the law, as it applies to "occurrence" and to "bodily injury" is unsettled in both Louisiana and Colorado. Neither Colorado's nor Louisiana's Supreme Courts have determined whether negligent misrepresentations can constitute "occurrences" in CGL policies such as the one at issue. Similarly,

neither court has considered whether loss of sleep, combined with alleged severe emotional injury, is sufficient to maintain a claim for "bodily injury." Therefore, while the Court cannot definitively say that the supreme courts of the respective states would reach different conclusions on these questions, likewise the Court cannot say the laws of those states are "in harmony." Therefore, the conflict of laws compels the application of Louisiana's choice of law rules.

Louisiana's choice of law policy is clearly laid out in Louisiana Civil Code Article 3515:

> [A]n issue in a case having contacts with other states is governed by the law of the state whose policies would be most seriously impaired if its law were not applied to that issue. That state is determined by evaluating the strength and pertinence of the relevant policies of all involved states in the light of: (1) the relationship of each state to the parties and the dispute; and (2) the policies and needs of the interstate and international systems, including the policies of upholding the justified expectation of parties and of minimizing the adverse consequences that might follow from subject a party to the law of more than one state.

The Louisiana Civil Code Art. 3537 also provides specific guidance for determining the proper law to apply in contract disputes. The Court must consider a number of factors:

> (1) the pertinent contacts of each state to the parties and the transaction, including the place of negotiation, formation, and performance of the contract, the location of the object of the contract, and the domicile, habitual residence, or business of the parties; (2) the nature, type, and purpose of the contract; and (3) the policies referred to in Article 3515, as well as the policies of facilitating the orderly planning of transactions, of promoting commercial intercourse, and of protecting one party from undue imposition by the other.

This Court's March 13, 2009, ruling explained that

> Generally, Louisiana courts hold the law of state where an insurance policy is issued and executed governs the interpretation of that contract. *Woodfield v. Bowman,* 193 F. 3d 354, 360 (5th Cir. 1999). Colorado Casualty's motion argues that Colorado law should apply because: (1) Colorado is the location in which the relevant policies were negotiated, issued, and executed; and (2) the insured, General Steel, is a limited liability company formed under the laws of the State of Colorado, with its principal place of business in Colorado (3) many members of the putative class have no connection with Louisiana; and (4) Colorado courts have a heightened responsibility to scrutinize insurance contracts and invalidate provisions that violate public policy

7

or principles of fairness. (Rec. Doc. 334). General Steel argues that (1) any interest analysis is premature because there has been no determination of whether a class exists and what individuals would be a part of that class; and (2) alternatively, that if this Court decides this issue is ripe for judgment, Colorado law should not apply because none of the allegedly injured parties are Colorado residents; (3) Colorado has no other connection (with the exception of being the location of General Steel's headquarters and the place where the policy was issue[d]) to the parties and this litigation. (Rec. Doc. 386)

General Steel's arguments are not persuasive. Louisiana has some interest in the case, as Kreger is a Louisiana resident allegedly injured in Louisiana. However, Louisiana's interest in the dispute between a Colorado insurer and Colorado insured over an insurance policy issued and executed in Colorado is relatively minor. Colorado law must apply to the third party coverage claims.

### 2. Application of Colorado Law

Having determined that Colorado law governs this dispute, the Court must now apply that law. The unsettled status of Colorado law on the controlling issues is laid out above. When the law of the state is unsettled, federal courts must use their "best judgment" to determine the high court's likely outcome. *American Intern. Specialty Lines Ins. Co. v. Canal Indem. Co.*, 352 F.3d 254, 260 (5th Cir. 2003).

Under Colorado law, the duty to defend is much broader than the duty to indemnify. *Cyprus Amax*, 74 P.3d at 299-300. The duty to defend arises from the four corners of the complaint where the claims "even potentially fall within the policy's coverage"; the duty to indemnify is "only triggered where the policy actually covers the alleged harm" and generally cannot be determined until after the resolution of the underlying claims. *Id.* The Colorado courts have set a high bar for insurance companies seeking to avoid their duty to defend. *Compass Ins. Co. v. City of Littleton*, 984 P.2d 606, 613 (Colo. 1999). Where the allegations in the pleadings potentially or arguably fall

8

withing the policy coverage, the insurer must accept the defense of the claim. *Hecla Mining Co. v. New Hampshire Ins. Co.*, 811 P.2d 1083, 1089 (Colo. 1991). Further, although "words in an insurance policy should be given their plain and ordinary meaning . . . when a contractual provision is reasonably susceptible to different meanings it must be construed against the drafter and in favor of providing coverage to the insured." *Chacon v. American Family Mut. Ins. Co.*, 788 P.2d 748, 750 (Colo. 1994).

Whether negligent misrepresentation can constitute an occurrence under Colorado law is a close question. However, despite Colorado Casualty's objections that the underlying dispute is purely contractual, Kreger has alleged negligence claims that may have resulted in unforeseeable injuries. *See Carroll*, 894 P.2d at 753. The Court holds that the alleged negligence constitutes an occurrence under the CGL for the purposes of determining whether Colorado Casualty has a duty to defend.[2] Whether Kreger's alleged loss of sleep is sufficient to constitute physical manifestations of emotional distress is also a close question. Although the factual evidence is slim, it is nonetheless enough to suggest that claim is for more than "purely emotional" damages. *See National Casualty Co.* 833 P.2d at 746; *Nikitow*, 924 P.2d at 1088-89 . Given the breadth of the duty to defend, the Court cannot hold as a matter of law that Colorado Casualty had no duty to defend in this case. *See American Fire and Casualty Co.*, 282 Fed. Appx. 643 at 651.

Accordingly,

---

[2] Colorado Casualty also argues that Colorado's Economic Loss rule bars recovery in this case. (Rec. Doc. 530-2 at 20-22). However, Plaintiff's claims are not yet adequately briefed, and the court cannot determine at this stage whether any claims of negligence will be independent of the underlying contractual dispute. Further, a class certification hearing is scheduled in this matter that could also change the disposition of the case and impact the law that will be applied.

IT IS ORDERED that the Motion for Partial Summary Judgment filed by General Steel (Rec. Doc. 518) is hereby GRANTED. The Cross Motion for Summary Judgment filed by Third-Party Defendant Colorado Casualty (Rec. Doc. 530) is hereby DENIED.

New Orleans, Louisiana, this 21st day of September, 2009.

_____
**HELEN G. BERRIGAN**
**UNITED STATES DISTRICT JUDGE**